THEODULE KERTSON, APPELLANT, V. BARTHOLOMEW KERTSON ET AL., APPELLANTS; MARIE V. DESAUTELS ET AL., APPELLEES.

FILED DECEMBER 7, 1906. No. 14,435.

1. Contract: RATIFICATION. When a party who claimed he had been fraudulently induced to enter into a contract by reason of the concealment of material facts afterwards employs counsel, and after full investigation ratifies and indorses the contract and accepts benefits under it, he is bound by such ratification, and cannot again question the validity of the original contract.

2. Evidence examined, and *held* to uphold the judgment of the district court.

APPEAL from the district court for Madison county: JOHN F. BOYD, JUDGE. *Affirmed.*

M. B. Foster, Tibbets & Anderson and J. W. Molyneaux, for appellants.

Allen & Reed and M. D. Tyler, contra.

EPPERSON, C.

George S. Kertson, a bachelor, 76 years of age, and a resident of Madison county, in this state, died in said county on the 11th day of April, 1902, seized of a tract of 480 acres of land lying in said county, which is the subject of this litigation. He left surviving him four brothers and one sister of the half and one of the full blood, and issue of a deceased sister. Of these persons, three of the brothers and one George E. Marquette, sole issue of one of the deceased sisters, were residents of the United States and the remainder were residents of the Dominion of Canada and subjects of the British crown. All of these persons claimed to be heirs at law of the deceased. He also left at his death an instrument purporting to be his last will and testament by which he disposed of his entire estate, except the said tract of land, to persons other than those above mentioned. Some two years prior to his death Kertson executed a deed purporting to convey the land to William A. Lafleur and deposited it with the First National Bank at Madison, together with a written direction to the bank that the instrument should be retained by it and should not become effective until after his death, when it should be delivered to the grantee.

Upon the death of the grantor, the deed was delivered to Lafleur, who filed it for record with the register of deeds of the county, and the will was also proposed for probate by one of the executors therein named. The sister and half sister and one of the brothers and the issue

of one of the deceased sisters of the deceased, through
William V. Allen and Willis E. Reed, as their attorneys,
filed objections to the probate of the instrument on the
ground of the alleged mental incompetency of the tes-
tator. The objections were overruled and an order of
probate rendered from which an appeal was taken to the
district court. By this instrument a legacy and bequest
were given to Lafleur aggregating about $6,000 in amount
and value. At about the same time A. Napoleon La For-
est and others, claiming as heirs at law of the deceased,
began an action by Allen & Reed, as their attorneys, to
restrain Lafleur from disposing of or incumbering the
land until such time as the title thereto could be judi-
cially ascertained and determined, and praying that it be
declared and quieted in themselves and others who
should be found to be such heirs. On the 3d day of June,
1902, a written stipulation in this action was entered into
to the effect that, in order to prevent delay in the probat-
ing of the will, and tedious and expensive litigation, La-
fleur should and did relinquish all claims as beneficiary
under said will, and should convey the land by separate
deeds to one Peter Rubendall in trust, one-half thereof
for the heirs at law of the deceased, and the other half
for William V. Allen and Willis E. Reed. And, in
further consideration of the premises, it was stipulated
that Lafleur should be paid the sum of $6,000 in money
out of the first distribution of the proceeds of the personal
estate of the deceased, which sum should be charged as
a lien upon the land, and should become due in April,
1903, until which time the deeds should be in escrow.
This instrument was signed by Lafleur, by his attorneys
of record, and by Allen and Reed, as attorneys for certain
of the heirs at law named therein, and purported to be
for the benefit of all other such heirs as should see fit
to participate therein and in the settlement thereby
effected. One Mary Sweeney, a resident of the state of
Illinois, was bequeathed by the will a legacy of $5,000,
and after the execution of the foregoing agreement Allen

& Reed carried on such negotiations with her as resulted in the execution by her on the 11th day of November, 1902, of a written assignment to them, for the benefit of their clients, of her right thereto for the sum of $2,500 in money, which they advanced.

On the first day of May, 1903, a further stipulation was entered into by and between Lafleur and all the heirs at law of the deceased, by which the former stipulation of June 3, 1902, was expressly ratified and confirmed, and the heirs expressly assumed and agreed to pay the $6,000 reserved to Lafleur out of the first moneys derived from a distribution of the proceeds of the personal estate, and by which Lafleur again stipulated to relinquish his demands upon the estate and to make conveyance of the land to or for the benefit of the heirs and Allen & Reed pursuant to the former agreement. This latter stipulation was executed by Lafleur, by his attorneys of record, and by George E. Marquette in person, and as agent of Raymond, Theodule and Bartholomew Kertson, three of the brothers of the deceased, and by the rest of the heirs, by Allen & Reed, as their attorneys. At the same time a one-fourth interest in or part of the above mentioned Mary Sweeney legacy, amounting to $625.65, was assigned by Allen & Reed for the benefit of George Marquette and Raymond, Theodule and Bartholomew Kertson, all of whom acknowledged and approved of the assignment in writing. On the previous day, to wit, April 30, 1903, all the four last named persons had executed, the first of them by his own hand, and the other three by Marquette, as their agent, an express ratification in writing of all former agreements and contracts entered into between Allen & Reed and all or either of said persons. At or about the same time Raymond, Theodule and Bartholomew, each by quitclaim deed, conveyed his interest in the land to Marquette, and the latter executed a mortgage thereon to secure a promissory note for $2,700 to the attorneys of himself and his grantors. And at the same time, also, each of the four persons last named received

from Rubendall written assignments of the several interests of each in the estate of the deceased formerly acquired by said Rubendall. Subsequently the appeal in the probate proceeding was abandoned, and the administrator with the will annexed paid to Lafleur the stipulated sum of $6,000 and interest, and obtained his receipt therefor. The affairs of the estate were thereupon fully administered upon and settled.

This action was begun in February, 1904, by Theodule Kertson in behalf of himself and Raymond and Bartholomew, all brothers of the deceased, and George E. Marquette, sole issue of a deceased sister of the deceased, claiming that they were the sole heirs at law of the deceased to the exclusion of all others claiming to be such, for the reason that the latter were nonresident aliens and excluded by the statutes of this state, and alleging the invalidity of the deed from the deceased to Lafleur and of the conveyance from Lafleur to Rubendall, on the grounds that the latter instruments were without consideration, and were executed with notice that the former was void, both because it was testamentary in character and because of the alleged mental incapacity of the deceased at the time of its execution, and praying to have said instruments canceled and set aside, and title to the entire tract quieted, one undivided fourth in each of themselves in severalty. Raymond and Bartholomew Kertson and Marquette were made nominal defendants, and filed answers and cross-petitions, alleging substantially the same matters contained in the petition of the plaintiff. Allen & Reed filed answers and cross-petitions, alleging their employment by written contract with the plaintiff and cross-petitioners, already named, and others claiming to be heirs at law of the deceased, for the purpose of prosecuting and defending suits, actions and proceedings at law and in equity necessary for testing and determining the validity of the will and of the conveyance by the deceased to Lafleur, and for collecting and preserving the estate of the deceased, with full authority to compromise and settle any such litiga-

tion in such manner as to them should seem proper, and stipulating that they should be entitled to demand and receive or retain, in consideration of their services in the premises, an undivided one-half of all of said estate they should thus be able to obtain or recover. And they further alleged that the said conveyance of an undivided one-half of said tract of land, pursuant to the stipulations before mentioned, to the said Rubendall in trust for the said Allen & Reed was made in consideration of said stipulations and agreements and of the services thereby contemplated and rendered thereunder.

An explicit analysis of the 800 pages of the pleadings and evidence would serve no useful purpose. The only important issue presented is founded upon the contract of employment entered into by the appellants and Allen & Reed. This contract and the subsequent ratification agreement of April 30, 1903, appellants contend is not binding upon them because, it is alleged, they were deceived and misled into signing them. The evidence tends to disclose that prior to April 30, 1903, appellants doubted the integrity of Allen & Reed. They were suspicious that they had been imposed upon in the agreement previously made. Being thus apprehensive that the attorneys had perpetrated a fraud upon them, Marquette, armed with authority to represent Raymond, Theodule, and Bartholomew Kertson, came to Madison county and employed resident counsel of his own selection, who were in no way identified with Allen & Reed, and who, it appears, were industrious and faithful in their employment. whatever facts, if any, were withheld from appellants when the original contract of employment was entered into were known to Marquette on April 30, 1903. A discussion, therefore, of the original transactions we deem unnecessary. Suffice to say that on its face there is no appearance of fraud or unconscionable or unprofessional conduct on the part of the attorneys. And the record discloses that they rendered valuable services, and the com-

pensation contracted for is not alleged nor proved to be excessive.

After Marquette had investigated the matter and employed counsel as above stated, acting for himself and his uncles, he signed the following agreement: "Madison, Neb., April 30, 1903. Upon due consideration and being fully advised in the premises of all facts and circumstances respecting the matter of the estate of George S. Kertson, deceased, I, George E. Marquette, for and on behalf of myself and my uncles, Raymond Kertson, Theodule Kertson and Bartholomew Kertson, for whom I am duly authorized to act, do hereby ratify and confirm the written contract heretofore entered into between said firm of Allen & Reed and the undersigned George E. Marquette, and also the contracts respectively entered into between Allen & Reed and Theodule Kertson, Raymond Kertson and Bartholomew Kertson, respectively. (Signed) George E. Marquette. Raymond Kertson, by George E. Marquette, his agent. Theodule Kertson, by George E. Marquette, his agent. Bartholomew Kertson, by George E. Marquette, his agent. Witness: M. B. Foster."

Appellants further contend that Marquette had no authority to sign the above agreement in their behalf and that it was signed in ignorance of the true state of affairs. This contention is incredible and is contradicted by the full history of the transaction. Contemporaneous with the agreement above set out, Marquette had, while acting in the same capacity, entered into other arrangements and contracts under which he and those for whom he was acting received money and property which they still retain. It is apparent from the record that Marquette's visit to Madison county was for the purpose of investigating the conduct of Allen & Reed, and in addition thereto to bring about a settlement of the estate. The several contracts signed by him promoted these objects, and the administration of the estate proceeded, and a settlement of the entire matter was effected, as far as the litigation then pending or threatened and the probate proceedings were con-

cerned. By their ratification of the former proceedings they themselves wholly exonerated Allen & Reed, and the attack they now make is wholly unjustifiable.

The district court found the issues joined in favor of the defendants Allen & Reed, adjudging them to have a first and prior lien upon the tract of land to the amount of one-half the value thereof, and ordered the tract sold for the purposes of partition, and the proceeds distributed among the several persons, lienors and heirs at law of the deceased, in manner and amounts specifically determined by the decree. Lafleur filed a cross-bill in which he prayed to be released from his covenants of warranty in the deeds executed by him to Rubendall, and it was so adjudged, rightly so, we think, because, as the matter eventuated, he served merely as a conduit through which the title passed from the deceased to the heirs at law of the latter, Lafleur, as the settlement established and as the court in effect adjudged, never having had any beneficial interest therein. Other parts and dispositions of the decree which are not in controversy and which are not affected by this decision need not be here set forth.

We are satisfied that the judgment is fully sustained by the pleadings and the evidence, and recommend that the judgment be affirmed.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.